UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMENA W.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. C25-1518-MLP

ORDER

## I.      INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating the medical opinion evidence and Plaintiff's testimony, resulting in an erroneous residual functional capacity ("RFC") finding. (Dkt. # 15.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 17.) Plaintiff filed a reply. (Dkt. # 18.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## II.    BACKGROUND

Plaintiff was born in 1980, has at least a high school education, and previously worked as a nursing assistant. AR at 29. She has not engaged in substantial gainful activity since the alleged onset date. *Id.* at 20. In October 2020 and June 2021, Plaintiff applied for disability benefits, alleging disability beginning August 3, 2019. *Id.* at 18. Her applications were denied initially and on reconsideration, and she requested a hearing. *Id.* Following an April 2024 hearing, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 18-30.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff could perform light work with additional physical and mental limitations. AR at 23. Physically, the ALJ limited Plaintiff to never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; and occasionally balancing and stooping. *Id.* The ALJ further found that Plaintiff could frequently handle and finger, could occasionally reach overhead with the right upper extremity, must avoid moderate exposure to excessive vibration and hazards, and must avoid concentrated exposure to extreme heat and to wet or humid conditions. *Id.* Mentally, the ALJ limited Plaintiff to occasional interaction with the public and coworkers and found that her productivity would be reduced by 10% due to the effects of her impairments. *Id.*

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR at 1-6. Plaintiff then appealed to this Court. (Dkt. # 5.)

## III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of benefits only if the ALJ's decision is based on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is "such relevant

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

ORDER - 2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The Court must consider the record as a whole in determining whether substantial evidence supports the ALJ's findings. *Id.*

Although the Court reviews the entire record, it may not reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is responsible for evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Evaluating Medical Evidence

Under the regulations applicable to this case, the ALJ must articulate the persuasiveness of each medical opinion, specifically addressing whether the opinion is supported by objective evidence and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

#### 1.   *Eugene Gu, M.D.*

In July 2023, Dr. Gu performed a consultative physical examination. AR at 2103-07. He diagnosed cyclic vomiting syndrome, chronic low back pain, type 2 diabetes with blurry vision, and chronic pain and weakness in the right shoulder, arm, and hand, and opined that Plaintiff

ORDER - 3

could stand thirty minutes and walk four hours total in an eight-hour day; lift/carry five pounds occasionally and one pound frequently; had right-arm reaching, gripping, handling, fingering, and feeling limitations; and had squatting, kneeling, climbing, and crawling limitations. *Id.* at 2106-07.

The ALJ acknowledged Dr. Gu's finding of decreased strength in the right upper extremity but noted that "the remainder of the physical exam findings were within normal limits, including normal left upper extremity strength, normal gait and station, normal motor muscle strength, normal reflexes, intact sensation and normal range of motion." AR at 27 (citing *id.* at 2105-06). On this basis, the ALJ concluded that Dr. Gu's examination did not support the severity of his standing, walking, and lifting limitations, even while crediting right-arm weakness as a basis for some right-sided manipulative and reaching restrictions. *Id.*; *see Woods*, 32 F.4th at 793-94.

Plaintiff contends the ALJ's supportability analysis is deficient because he did not mention that Dr. Gu had reviewed a discharge summary, a progress note, and an emergency-room record listed on the first page of his report. (Dkt. # 15 at 6-7.) But Plaintiff does not explain how those three documents objectively support limiting her to thirty minutes of standing and five pounds of lifting, beyond Dr. Gu's own physical findings. An ALJ "need not discuss all evidence presented," only the rejection of "significant probative evidence." *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (quoted source omitted). The ALJ's supportability rationale rested on the mismatch between Dr. Gu's normal gait, strength, and neurological findings and his extreme endurance and lifting limits; failure to separately summarize the background records he listed does not undermine that reasoning.

ORDER - 4

Plaintiff also argues the ALJ "cherry-picked" by citing only a handful of treatment notes to find Dr. Gu's opinion inconsistent with the overall record, and by omitting discussion of the emergency-room visit Dr. Gu referenced. (Dkt. # 15 at 8-9 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001)).) But she identifies no probative contrary evidence that the ALJ ignored which supports limitations as restrictive as Dr. Gu's. Nor do the emergency-room records Dr. Gu listed contain objective findings of significant standing, walking, or lifting deficits. *See* AR at 1359-64 (emergency-room visit for abdominal pain and vomiting, treated conservatively, with movement in all extremities and grossly intact motor and sensory function).

By contrast, the ALJ cited representative records documenting normal or near-normal gait, range of motion, strength, reflexes, and sensation, and his description of largely benign musculoskeletal and neurological findings is supported by other notes Plaintiff does not dispute. *See, e.g.*, AR at 459, 490, 952, 957, 988, 1039, 1064, 1070, 1471, 1935, 2012; *see also Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006). The ALJ was not required to catalog every normal exam; providing a reasoned sample illustrating inconsistency with Dr. Gu's most extreme restrictions was sufficient. *Wischmann*, 68 F.4th at 505.

Plaintiff's disagreement with the ALJ's weighing of Dr. Gu's opinion does not show that the ALJ mischaracterized the record or ignored significant contrary findings. The ALJ's evaluation of Dr. Gu's opinion addressed both supportability and consistency and is supported by substantial evidence. Accordingly, the ALJ did not err in his evaluation of Dr. Gu's opinion.

**B.      The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

Absent evidence of malingering, an ALJ must provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). The ALJ is not required to believe every allegation or to analyze testimony line by line.

ORDER - 5

*See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether the Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

               *1.*      *Stomach Pain, Vomiting, and Treatment*

Plaintiff testified to near-constant, debilitating abdominal pain and vomiting that prevented her from standing, eating, or functioning. AR at 41-45. The ALJ contrasted this with treatment records documenting substantial improvement with prescribed medications, particularly Suboxone, and exacerbations associated with stopping or underusing those medications. *Id.* at 25.

In 2020 and 2021, Plaintiff repeatedly reported that "the new medicine is working," that Suboxone helped her pain, and that she experienced periods of no vomiting and 0/10 abdominal pain while compliant with her regimen. *See*, *e.g.*, AR at 1058, 1068, 1873-75, 1921, 1924, 1931, 1939, 1949. Providers also repeatedly expressed concern that she had stopped or intermittently taken her gastrointestinal and other medications and explicitly linked some exacerbations to that noncompliance. *See id.* at 944-45 ("I worry that some of your symptoms likely came from stopping all of your medications"), 1059, 1199-1201, 1408, 1886. By 2023, providers noted Plaintiff had been stable and had not required hospital admission for cyclic vomiting syndrome "in multiple years." *Id.* at 1991. The ALJ reasonably relied on this pattern of improvement with treatment and worsening with noncompliance to find that Plaintiff's allegations of constant, incapacitating symptoms were overstated. *See Smartt*, 53 F.4th at 499.

Plaintiff contends the ALJ "played doctor" by suggesting opiate withdrawal contributed to some hospitalizations and by emphasizing that Suboxone was prescribed for opioid use disorder, not solely gastrointestinal symptoms. (Dkt. # 15 at 11-13.) The ALJ, however, cited

ORDER - 6

providers' own notes documenting narcotic dependence, prescribing Suboxone for opioid use disorder and chronic pain, and expressing concern that withdrawal could be contributing to Plaintiff's nausea, increased pain, and tachycardia/hypertension when she had not refilled or was underusing Suboxone. *See*, *e.g.*, AR at 1050, 1108, 1133, 1164, 1181, 1190, 1197, 1233. This reflects a measured synthesis of medical evidence, not an unfounded lay medical opinion.

The ALJ also cited a February 2021 visit where Plaintiff reported she had run out of Suboxone the prior day and "started throwing up." AR at 25 (citing *id.* at 1927). Although the working diagnosis remained cyclic vomiting syndrome, the ALJ reasonably treated this as further evidence that her symptoms were tightly linked to adherence to a medication she otherwise described as effective.

### 2. Etiology and Objective Gastrointestinal Workup

The ALJ additionally pointed to extensive gastrointestinal and endocrine workups that failed to reveal an acute or progressive structural cause commensurate with Plaintiff's claimed level of pain and disability. AR at 25. Providers described the etiology as "unclear," found "no acute intra-abdominal process," and noted "unidentified pathology," observing that her reported pain appeared out of proportion to imaging and endoscopic findings. *See*, *e.g.*, *id.* at 468, 1037-38, 1164, 1183, 1223, 1503.

While lack of objective corroboration alone cannot justify rejecting symptom testimony, inconsistency with the medical record is a valid factor. *Smartt*, 53 F.4th at 499; *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Taken together with evidence of improvement on treatment and exacerbations linked to noncompliance, the ALJ reasonably concluded that the record did not support the alleged constant, debilitating gastrointestinal symptoms.

ORDER - 7

Plaintiff also disputes the ALJ's reliance on records noting that her symptoms were "largely resolved" during an eight-month stay in the Congo and that providers found the medication she used there "helpful." (Dkt. # 15 at 13-14; AR at 25 (citing *id.* at 1950, 1992).) She testified that treatment abroad did not help and that symptoms continued unabated, but contemporaneous records document minimal symptoms while in the Congo and later reports of stability and minimal or no pain. AR at 45-47, 1931, 1939, 1949, 1991-92. The ALJ permissibly viewed this conflict between Plaintiff's testimony and the longitudinal record as another reason to discount her allegations. *See Smartt*, 53 F.4th at 499.

### 3. *Right Shoulder Allegations and Objective Findings*

Plaintiff testified that her right arm was effectively "lost"—she could not hold anything or reach straight in front. AR at 47. The ALJ acknowledged abnormal right-shoulder imaging and exam findings and noted that surgery had been deferred in part due to diabetes control. *Id.* at 25-26. He also cited numerous routine examinations showing normal muscle bulk and tone, no gross musculoskeletal deformities, intact motor function, full (5/5) strength in the bilateral upper and lower extremities, and normal cervical range of motion. *See*, *e.g.*, *id.* at 1166, 1171, 1195, 1214, 1236, 1263, 1287, 1438, 1990, 1993, 2004. Given this record, the ALJ reasonably found that Plaintiff's depiction of her right arm as essentially nonfunctional overstated her limitations. *See Smartt*, 53 F.4th at 499. Plaintiff's disagreement with that assessment does not show that the ALJ ignored probative contrary evidence. (Dkt. # 15 at 14.)

### 4. *Mental Health Allegations and Mild to Moderate Limitations*

Finally, Plaintiff argues the ALJ did not adequately explain how the cited mental-status findings justify only modest mental limitations. (Dkt. # 15 at 14-15.) The ALJ noted that records not generated in connection with her disability application frequently documented that she was

ORDER - 8

pleasant and cooperative, with normal mood and affect; intact cognition; no confusion; and intact insight and judgment, even during visits for acute physical complaints. AR at 26 (citing *id.* at 1086, 1090, 1121, 1128, 1132, 1720, 1741, 1870, 1897, 1990, 1993, 2010).

The ALJ weighed this against records showing depressed mood and flat affect and concluded that Plaintiff had moderate limitations in the four "paragraph B" areas, which he accommodated by limiting her to simple, routine tasks with additional social and adaptation limits. AR at 22-23, 26. He was not required to summarize every mental-status exam. *See Lambert*, 980 F.3d at 1277. His narrative identified the findings he considered most probative and explained, at a general level, how they supported moderate—but not disabling—mental restrictions. That explanation was sufficient. *See Smartt*, 53 F.4th at 499.

C.      **The ALJ Did Not Err in Evaluating RFC**

Plaintiff contends the RFC is incomplete because it does not include additional limitations she believes are warranted, such as absences exceeding one day per month, based on her history of multiple hospitalizations and treatment visits. (Dkt. # 15 at 15-16.)

An ALJ is capable at some level "of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). The ALJ expressly acknowledged Plaintiff's numerous hospitalizations between November 2019 and December 2020, and he accounted for her impairments by limiting her to light work with significant postural, environmental, and manipulative restrictions and by reducing her expected productivity by 10%. AR at 23, 25. He also considered later records showing improved control of abdominal pain and vomiting with medication, stability without recurrent hospitalizations in

ORDER - 9

more recent years, and minimal symptoms during much of 2022 while abroad. *Id.* at 25-26 (citing *id.* at 1873-75, 1931, 1939, 1949, 1950, 1991-92).

Plaintiff does not identify a specific functional limitation, supported by the record, that the ALJ was required but failed to include. Her RFC challenge simply reiterates her disagreements with the ALJ's evaluation of the medical evidence and her testimony, which the Court has rejected. Because the RFC incorporates all limitations the ALJ reasonably found supported by substantial evidence and reflects a rational interpretation of the record, the ALJ's RFC finding was proper. *See Ford*, 950 F.3d at 1154; *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015).

### V.      CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 12th day of March, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 10